HOUSTON COTTON EXCHANGE BUILDING COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 103805. Promulgated September 5, 1941.

*Charles Dillingham, Esq.*, for the petitioner.
*Wilford H. Payne, Esq.*, for the respondent.

OPINION.

Smith: The petitioner claims that it is entitled, in computing the surtax on its undistributed profits for the fiscal year ended January 31, 1938, to a credit under section 26 (c) (1) or (2) of the Revenue Act of 1936, the material provisions of which are as follows:

SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\* \* \* \* \* \* \*

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. \* \* \*

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year for the discharge of a debt, irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936.

The only written contract of the petitioner now before us which prohibited the payment of dividends or required the setting aside of earnings or profits to discharge a debt during the taxable year was the first mortgage indenture executed on February 1, 1937. Such a contract does not fall within the provisions of section 26 (c) because it was not executed prior to May 1, 1936. However, the petitioner asserts that we should carry forward into the 1937 indenture the provisions of the 1923 indenture and the supplement thereto, to hold that the payment of dividends and the setting aside of earnings were controlled by a written contract executed prior to May 1, 1936. The 1923 first mortgage and supplement and the 1923 second mortgage and supplement do not contain any provision expressly prohibiting the payment of dividends. It is, therefore, clear that no credit is allowable under section 26 (c) (1), even if petitioner should be sustained in its contention that we should carry forward the provisions of the old indentures. Respondent is sustained on this issue.

The petitioner's second contention is that it is entitled to a credit under section 26 (c) (2) for the reason that it set aside its earnings and profits for the taxable year pursuant to the requirements of a written contract.

To bring itself within the grace of section 26 (c) (2) the taxpayer must prove a written contract, executed prior to May 1, 1936, which requires the payment or the setting aside of earnings to discharge a debt incurred on or before April 30, 1936. We may assume, without deciding the question, that this petitioner's debt, in existence in the taxable year, was incurred on or before April 30, 1936. *Sun Pipe Line Co.*, 42 B. T. A. 1413. However, the second condition imposed by the statute remains unsatisfied, for the contract here in question was executed after May 1, 1936.

The Board, in the *Sun Pipe Line Co.* case, *supra*, was called upon to construe the phrase "indebtedness incurred prior to January 1, 1934" in section 351 (b) (2) (B) of the Revenue Act of 1936, as amended by section 355 (b) of the Revenue Act of 1937. After the statutory date the petitioner had refinanced its old bonds by an arrangement substantially similar to that made by the present petitioner on February 1, 1937. The Board there held that the new debt was incurred prior to the statutory date, as it was not new in the economic sense, but merely replaced the old indebtedness. The statute there construed did not contain any reference to the execution date of a contract. It must be remembered that the debt and the contract mentioned in section 26 (c) (2) are two different and independent things, and Congress has set forth a separate date to be used in the treatment of each one. It would be unwarranted for us to disregard the plain meaning of the language used in the statute.

We do not find in either of the second mortgage agreements any provisions expressly dealing with the disposition of earnings and profits and requiring any portion thereof to be paid in discharge of a debt incurred prior to May 1, 1936, or to be set aside for that purpose. The 1934 supplemental second mortgage indenture provides that interest on the bonds shall be payable "if and when earned, under the terms * * * of the First Mortgage Supplemental Agreement." This is the only clause to which petitioner has directed our attention in any of the second mortgage deeds, and clearly it does not expressly deal with the disposition of earnings and profits. It is not necessary to go into that question, however, because, as we said with respect to the first mortgage contracts, the provisions of the 1923 second mortgage deed, and its supplement, can not be carried forward into the 1937 second mortgage deed. Furthermore, no part of petitioner's earnings were set aside in 1938 to pay principal on the second mortgage bonds.

We hold that in the taxable year the petitioner was not required by a written contract executed prior to May 1, 1936, to pay or set aside its earnings and profits, or any part thereof, to discharge a debt.

The petitioner has urged that its position is supported by *Sutcliffe Co.*, 41 B. T. A. 1009. We do not agree, for the reason that the *Sutcliffe* case is distinguishable on its facts. There the original contract continued in effect, and was not discharged by a second contract which was executed after the statutory date and which merely modified the original contract. *Haskelite Manufacturing Corporation*, 44 B. T. A. 636, also involved a contract which, although executed after the statutory date, merely modified the original contract, which continued in full effect so that its restrictive provisions controlled rather than the provisions of the new contract.

*Decision will be entered for the respondent.*